UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **PARKERVISION, INC.,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL NO. W-23-CV-00384-ADA |
| § | |
| **TEXAS INSTRUMENTS INCORPO-** § | |
| **RATED,** § | |
| § | |
| Defendant. § | |

**ORDER DENYING MOTION TO TRANSFER VENUE**

## I.   INTRODUCTION

Before the Court is Defendant Texas Instruments Incorporated's Motion to Transfer Venue. ECF No. 40. Plaintiff ParkerVision, Inc. opposes, ECF No. 44, and TI replies, ECF No. 45. After a careful consideration of the parties' briefing, the relevant facts, and the applicable law, the Court **DENIES** the motion.

## II.   BACKGROUND

ParkerVision sued TI for infringement of U.S. Patent Nos. 7,496,342; 7,865,177; and 9,118,528, which all generally relate to the same technology of down-conversion of higher frequency electromagnetic signals to lower frequency electromagnetic signals. ECF No. 1 at 1, 9, 13, and 15. ParkerVision is incorporated and headquartered in Florida; TI is incorporated in Delaware and headquartered in Dallas, Texas. ECF No. 1; ECF No. 17 at 35. ParkerVision accused TI's wireless transceiver chips, including the AFE76XX, AFE77XX, AFE79XX, and AFE 80xx series transceivers, of infringing the asserted patents. *See* ECF No. 1 at 3.

ParkerVision has filed at least fifteen cases in this Court: six closed, eight active and co-pending, and one with another judge (that has since been reassigned to the undersigned). ECF No.

44 at 3; *ParkerVision, Inc. v. MediaTek Inc.*, No. 6:23-cv-732, ECF No. 26 (W.D. Tex. Mar. 22, 2024). In five of these cases, the Court issued claim constructions. In two, Special Master Dr. Joshua J. Yi (who has also been appointed in this case, *see* ECF No. 42) conducted *Markman* hearings and recommended constructions to the Court. Another case reached a trial but settled before the verdict. *See* ECF No. 44 at 4; *ParkerVision, Inc. v. Intel Corp.*, No. 6:20-cv-108, ECF No. 294 (W.D. Tex. Feb. 7, 2023).

For added context, a specific review of the Court's experience with the asserted patents is in order. The Court, including Dr. Yi, is most familiar with the '528 patent. The Court has construed that patent in four separate litigations. ECF No. 44 at 5. Notably, two of the three '528 patent terms to be construed in this case were previously construed by the Court. *See* ECF No. 50 at 4; *ParkerVision, Inc. v. LG Elecs., Inc.*, No. 6:21-cv-520, ECF No. 55 at 28, 42. The '528 patent purports to be a continuation of the '177 patent. '528 Patent, 1:10–21. While the Court has not previously construed the '177 patent, Dr. Yi heard argument on it at a consolidated *Markman* hearing on June 14, 2024. *See* ECF No. 54. That consolidated hearing included other ParkerVision cases where ParkerVision has asserted the '177 patent but the defendant has not moved to transfer venue. *See, e.g.*, *ParkerVision, Inc. v. NXP Semiconductors NV*, No. 6:23-cv-389, ECF No. 39 (W.D. Tex. May 2, 2024). As of this writing, *no* other currently active ParkerVision case in this Court has had a motion to transfer venue filed. The Court has the least experience with the '342 patent, as ParkerVision has not previously asserted it in its other cases. However, the '342 and '177 both claim priority to U.S. Patent No. 6,061,551. ECF No. 44 at 5.

TI moved to transfer on December 20, 2023. ECF No. 40. TI's motion argues not that venue is improper in this district, but that this case should be transferred to the Northern District of Texas ("NDTX") for convenience under 28 U.S.C. § 1404(a). *See id.* For factual support, TI

relies on a declaration by its employee Anusha Kolla, a Project Line Manager for the Wireless Infrastructure Group. ECF No. 40-1 ("Kolla Decl.").

### III.  LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). In addition, the "movant must show (1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (emphases in original).

With regards to the resolution of individual factors, the Fifth Circuit has held that "[w]here there is no demonstration by the movant, let alone a clear one, the court cannot weigh a factor against the non-movant and in favor of transfer." *Def. Distributed v. Bruck*, 30 F.4th 414, 434 (5th Cir. 2022). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor clearly favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

IV.    **ANALYSIS**

At the threshold, TI must show that venue and jurisdiction would have been proper in the proposed transferee forum, here the NDTX. TI satisfied this burden by showing that it is headquartered in the NDTX. ECF No. 17 at 35.

**A. Judicial economy considerations, standing alone, justify denying transfer.**

Although the familiar eight public and private interest factors play a rightfully large role in the analysis of transfer motions, they are not the be all and end all. Established Federal Circuit precedent holds that transfer for convenience can be denied based on judicial economy concerns. *See In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010) (denying a petition for mandamus of transfer because of judicial economy, even where the district court weighed the convenience factors in favor of transfer). The parties dispute whether the Court's previous ParkerVision experience and current ParkerVision cases justify keeping this case in the WDTX. They do.

In *In re Vistaprint Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010), the Federal Circuit denied mandamus of a denial of transfer based on judicial economy concerns, even though the district court weighed the convenience factors in favor of transfer. *See* 628 F.3d at 1344, 1347. Specifically, the district court pointed to its "substantial experience with the patent-in-suit based on prior litigation involving the plaintiff, which included a hearing and lengthy opinion construing various claim terms," as well as "a second, co-pending case before the court between the plaintiff and another defendant involving the same patent-in-suit, pertaining to the same underlying technology, and involving similar accused services." *Id.* at 1344. The Federal Circuit held that the weight assigned to judicial economy was not patently erroneous, even though the co-pending cases "may not involve the same defendants and accused products." *Id.* The Federal Circuit further held that the court's past and present experience constituted "substantial justification" to not transfer such that the district court's decision was not an abuse of discretion. *See id.* at 1346–47.

TI cites two main cases to rebut the judicial economy argument. First, *In re Google LLC* was a case where "[t]he only reason the court gave for this determination [that all other practical problems weighed against transfer] was Jawbone's co-pending case against Apple in the Western

5

District of Texas." 58 F.4th 1379, 1382–83 (Fed. Cir. 2023). However, the co-pending case also had a pending motion to transfer to the NDCA, where another Jawbone case with the same patents had already been transferred. *Id.* Second, *In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021), involved one co-pending case where only two patents overlapped and "an entirely different underlying application" was involved, leading the Federal Circuit to conclude that the two cases were likely to undergo significantly different proceedings. *See* 2 F.4th at 1379–80.

Even assuming for argument's sake that the convenience factors favor the NDTX, the Court nevertheless holds that the *In re Vistaprint* rule applies to deny transfer. As shown above, the Court and special master are very familiar with the '528 patent, which is also closely related to the other two asserted patents, as well as the underlying technology of all three asserted patents. There are also several co-pending cases, involving at least the '528 patent, that do not face the prospect of transfer to the NDTX. The *In re Vistaprint* court held that just one related case that "may not involve the same defendants and accused products" could lead to the conclusion that denial of transfer would conserve judicial resources. 628 F.3d at 1344. That argument applies even more strongly here, where there are several such cases. Under these circumstances, judicial economy favors keeping this case together with ParkerVision's other active cases.

TI's case citations and arguments against this conclusion do not persuade. *In re Google* and *In re Samsung* are both distinguishable because both cases involved judicial economy concerns only based on co-pending cases. *See* 58 F.4th at 1382–83; 2 F.4th at 1379–80. *In re Google* is even further distinguishable because the only co-pending case there had also moved to transfer to the NDCA, where another case involving the same patents had recently been transferred. *See* 58 F.4th at 1382–83. In contrast, no other currently active ParkerVision case has moved to transfer, much less successfully been transferred, to the NDTX. This case is more like *In re Vistaprint* because

both involve a district court with significant *past* experience, including lengthy claim construction opinions from prior litigations involving the same asserted patents. *See* 628 F.3d at 1344; *ParkerVision, Inc. v. Hisense Co., Ltd.*, No. 6:20-cv-870, ECF No. 72 (W.D. Tex. Aug. 29, 2022). The Court acknowledges that it does not have past experience with every asserted patent in this case. However, that is not what the law requires. Indeed, the Federal Circuit recently denied mandamus of a decision finding that judicial economy weighed against transfer where the district court had prior experience with two of six asserted patents. *See In re Google LLC*, No. 2024-117, 2024 WL 1460003 (Fed. Cir. Apr. 4, 2024). Although the accused products are not exactly the same as in ParkerVision's past and co-pending cases in this district, the technology is sufficiently similar that there will be judicial economy gains from keeping this case consolidated here.

Additionally, this case further differs from both *In re Google* and *In re Samsung* because it involves a WDTX-NDTX transfer, while both of the latter involved WDTX-NDCA transfers. *See* 58 F.4th at 1381; 2 F.4th at 1373. It goes without saying that the gain in convenience from the former transfer pales in comparison to any gain in convenience from the latter. For example, it is plausible for Dallas-based witnesses to drive to Waco in the mornings of days they must attend trial and go home every night in a way that is not plausible for California-based witnesses. They would be in the good company of Waco Division jurors, who must do the same thing every day of the trial without the law much caring about their convenience. For example, a juror living in Centerville, Texas, the county seat of Leon County, would drive an estimated 81.4 miles, taking 1 hour and 21 minutes, to get to the humble steps of the Waco federal courthouse. In the Court's view, making any Dallas-based witnesses' commutes easier does not counterbalance the judicial economy losses from piecemeal litigating exactly one case in a courtroom unfamiliar with the patents

and the parties and within absolute subpoena distance of the Waco courthouse. Quite the opposite: judicial economy concerns justify denial of TI's motion to transfer.

### B. Alternatively, the convenience factors do not establish good cause to transfer.

The discussion above is sufficient to demonstrate that transfer should be denied. But to be comprehensive, the Court will also address the traditional convenience factors. The Court concludes that the factors do not warrant granting transfer.

#### 1. Public Interest Factors

##### a. *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* Yet the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. More

8

recently, the Fifth Circuit has noted that it is improper to ignore the rule, the implication being that it should always apply. *In re TikTok*, 85 F.4th at 361–62.

TI argues that this factor strongly favors transfer. TI states that all of its U.S.-based witnesses who are most likely to testify are located in the NDTX, as is the Wireless Infrastructure Group that develops the accused products. TI notes that five of seven management-level individuals and all US-based engineers in the group are in Dallas. TI also points to marketing and finance employees in Dallas. Furthermore, ParkerVision's infringement contentions cited to three articles published by TI employees, all of whom are located in either Dallas or India. In contrast, TI claims that no potential witnesses are located in the Austin TI sales office or in the WDTX more generally. Similarly, TI notes that ParkerVision has no relevant witnesses in the WDTX.

ParkerVision counters that this factor weighs against transfer for two main reasons. First, ParkerVision faults TI for failing to identify witnesses that will actually testify at trial and provide a summary of their likely testimony. ParkerVision notes that neither TI's motion nor the Kolla Declaration provide any names of likely witnesses. ParkerVision also points to the Bangalore-based design and development team and argues that the Indian designers are the most important witnesses. Second, ParkerVision argues that TI misapplied the 100-mile rule by calculating the distance from TI's Dallas office and the Waco courthouse. ParkerVision notes that the distance between the NDTX Dallas Division courthouse and the WDTX Waco Division courthouse is less than 100 miles. Accordingly, ParkerVision argues that the 100-mile rule does not apply and that any convenience gains will not be significant.

The Court holds that this factor slightly favors transfer. Starting with the 100-mile dispute, the Court agrees with ParkerVision that TI has misapplied the rule by calculating distances from TI's headquarters. The Fifth Circuit recently clarified that the evaluation of convenience for

9

willing witnesses "begin[s] by determining whether the *transferee venue* is more than one hundred miles from the transferor." *In re Clarke*, 94 F.4th 502, 514 (5th Cir. 2024) (emphasis added). The distance between the NDTX Dallas Division courthouse and the WDTX Waco division courthouse is less than one hundred miles. The costs of witnesses therefore are not entitled to "greater significance," *see In re Radmax, Ltd.*, 720 F.3d 285, 288–89 (5th Cir. 2013) (per curiam), nor does this factor scale based on the additional distance between venues. *See In re Clarke*, 94 F.4th at 514.

Turning to the counting of witnesses, outside of Ms. Kolla herself, the declaration lists six management employees Ms. Kolla directly oversees, four in Dallas and two overseas, and about twenty-five Dallas employees in Ms. Kolla's group. Kolla Decl. ¶ 6. The declaration also points to the group's Marketing and Applications Manager and its Finance and Operations Director, both of whom are located in Dallas. *Id.* ¶ 9. The Court will not credit TI for Ms. Kolla's four direct reports or for the twenty-five Dallas employees, as TI has presented them as an undifferentiated mass. *See* Kolla Decl. ¶ 6. These employees' mere affiliation with TI's Wireless Infrastructure Group is insufficient to establish what actual personal knowledge any of them may have about the accused products. Furthermore, the Court finds it exceedingly unlikely that all twenty-nine of these employees would be called at trial, meaning that TI's purported gain in convenience is not plainly obvious, but instead highly unlikely to materialize. *See In re Clarke*, 94 F.4th at 508. As for the Marketing Manager and Finance Director, TI apparently invites the Court to assume that these individuals have relevant and material knowledge solely by virtue of their job titles. The Kolla Declaration does not assert that these unnamed individuals were personally involved with the marketing and financial aspects of the accused products, nor does it show that the TI employees with personal knowledge would have passed said knowledge on to these individuals. The Court will therefore not credit them either. As a result, the only witness the Court will credit towards TI and

the NDTX is Ms. Kolla herself. Because TI has only shown one witness—who will likely have to travel less than 100 miles at that—the Court weighs this factor slightly in favor of transfer.

### b. *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is relative ease of access, not absolute ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345). The Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* suggests a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). As much as these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. Even so, the Court still considers the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

TI's position is that this factor strongly favors transfer. TI claims that "nearly all of the relevant evidence related to the accused technology is located in Dallas, where the Wireless Infrastructure Group is located and maintains its records." ECF No. 40 at 10; *see also* Kolla Decl. ¶ 11. Furthermore, "TI documents relating to the development, operating, testing, and customer support of the accused features were generated in Dallas and reside there today." ECF No. 40 at 10; *see also* Kolla Decl. ¶ 8. TI notes that its documents are only accessible by authorized employees, who are located in Dallas and India. In contrast, TI asserts that within this district there are no known relevant sources of proof, including among TI's local employees and at its Austin office, where nobody can access the relevant documents.

ParkerVision's view is that this factor weighs against transfer because the relative ease of access is insignificant. ParkerVision notes that TI's own evidence shows that design and some development documents are located in India and therefore must travel a great distance to be available in either forum. ParkerVision also accuses TI's arguments of being conclusory, including for failure to show the existence and identification of actual documents. Lastly, ParkerVision argues that the 100 mile difference between Dallas and Waco makes this factor insignificant.

The Court holds that this factor is neutral. At the outset, the Court notes that TI's factual declaration lacks critical detail. The declaration locates documents in both Dallas and India without stating what percentage of documents are overseas. *See* Kolla Decl. ¶¶ 7–9. For all the Court knows, the vast majority of the relevant documents are in India and would therefore have to travel a significant distance to either venue. Despite the ambiguities in the Kolla Declaration, TI's moving papers overplay its hand, claiming that "nearly all of the relevant evidence related to the accused technology is located in Dallas." ECF No. 40. The Court's view is that this statement is insufficiently supported and not credible. Furthermore, the Kolla declaration also fails to

12

distinguish between physical and electronic evidence. The Court is not convinced that there are substantial amounts of physical documents in the NDTX that would warrant weighing this factor heavily in favor of transfer. Given TI's failure to prove in adequate detail the sufficient presence of specific documents, especially physical documents, in Dallas, as opposed to India, the Court holds that this factor is neutral.

### c. *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on "non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *5 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). However, the Fifth Circuit has clarified that "the availability of compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood Fed'n of Am. Inc.*, 52 F.4th 625, 630−31 (5th Cir. 2022) (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 499 (6th Cir. 2016)).

13

TI asserts that this factor favors transfer. TI's entire justification for this claim is that it "is aware of several former TI employees, including applications engineers, product line manager, RF design engineer, who worked on AFE products, who live in or around Dallas and would be within the subpoena power of the Northern District of Texas." ECF No. 40 at 11–12. TI cites paragraph 10 of the Kolla declaration, which is essentially a word-for-word quote. *See* Kolla Decl. ¶ 10.

ParkerVision counters that this factor weighs against transfer. ParkerVision faults TI for failing to identify any specific third-party witnesses or explain their necessity. ParkerVision also notes that Dallas is within this Court's 100-mile absolute subpoena power and urges this Court to follow its past Dallas-Waco holdings weighing this factor against transfer. *See, e.g.*, *Speir Techs. Ltd. v. Apple Inc.*, No. 6:22-cv-77, 2022 WL 17945398, at *4–6 (W.D. Tex. Dec. 15, 2022).

The Court holds that this factor is neutral. TI's initial showing is speculative and inadequate. How many employees is "several?" What degree of involvement did they have in working on the AFE products? Where do they live in or around Dallas? Based on TI's briefing and the Kolla declaration, the Court cannot say. Critically, while TI argues that the indeterminate number of former employees are subject to the absolute subpoena power of the NDTX, it fails to address ParkerVision's point that this Court also possesses absolute subpoena power over Dallas witnesses. *See Speir Techs.*, 2022 WL 17945398, at *5. Accordingly, the witnesses TI points to do not weigh in favor of the NDTX. TI has therefore failed to show that this factor favors transfer.

That having been said, the Court must note that just because a factor does not favor transfer does not mean that it must weigh against transfer. A factor can be—and in this case *is*—neutral. ParkerVision's opposition brief ably but purely focuses on the inadequacies of TI's showing. *See* ECF No. 44 at 11–12. ParkerVision identifies no third-party witnesses of its own, much less third-party witnesses that this Court, but not the NDTX, would be able to compel. Based on the record

14

in front of it, the Court does not know where any third-party witnesses may come from, and it does not know whether the WDTX or the NDTX would have superior power to compel. In addition, TI argued only that it was aware of former TI employees who live in or around Dallas. *See* ECF No. 40 at 11–12. It neither alleged nor showed that any of those employees were unwilling to testify. *See id.* Under Fifth Circuit law, this factor must be granted less weight. *In re Planned Parenthood*, 52 F.4th at 630–31. Accordingly, the Court will treat this factor as neutral, neither favoring nor disfavoring transfer.

### d. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010)

TI argues that this factor is either neutral or slightly favors transfer. TI acknowledges that ParkerVision has three currently pending cases in this Court against different defendants that involve some of the same asserted patents. However, TI claims that those suits involve completely unrelated devices. In addition, TI argues that this factor cannot counterbalance all the other factors. ParkerVision appears to weigh this factor heavily against transfer. ParkerVision reiterates that this Court and Special Master Joshua Yi both have significant experience with ParkerVision and its

patents and prior cases. ParkerVision specifically points to the claim construction proceedings in seven ParkerVision cases and the trial in *ParkerVision v. Intel*. ParkerVision asserts that its patents "include[] heavily intertwined claim terms and specification support[] and focus[] on accused technologies for which this Court is intimately familiar." ECF No. 44 at 5. ParkerVision argues that transfer of just this one case to NDTX will actually result in significant *inconvenience*.

In this case, given this Court's significant past and present experience with ParkerVision and its patents, the Court holds that this factor strongly weighs against transfer for the reasons stated in Section IV.A, *supra*.

### 2. Private Interest Factors

#### a. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* The Court notes that the Federal Circuit recently concluded that this factor should not weigh against transfer when plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Yet the Fifth Circuit has said that this factor normally weighs against transfer when the "case appears to be timely proceeding to trial before the" transferee district. *In re TikTok*, 85 F.4th at 364.

16

The Court agrees with the parties that this factor is neutral. *See* ECF No. 40 at 14; ECF No. 44 at 14.

### b. *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and the events that gave rise to a suit.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). The Fifth Circuit has recently clarified that this factor is directed to "the interest of *non-party citizens* in adjudicating the case," *In re Chamber of Com. of U.S. of Am.*, No. 24-10463, 2024 WL 3042100, at *8 (5th Cir. June 18, 2024) (quoting *In re Clarke*, 94 F.4th at 511) (emphasis in original). "Localized interests are present when 'the citizens of the forum have a

sufficient interest in the controversy to justify burdening them with jury duty.'" *Id.* (quoting 5 Robert A. Matthews, Jr., Annotated Patent Digest § 36:175.50 (2024)).

TI argues that this factor strongly favors transfer. TI points to its headquarters in Dallas, where U.S.-based development of the accused products occurred and where all U.S. employees knowledgeable about those products work. In contrast, TI notes that ParkerVision has no presence or business in Texas. While TI acknowledges its Austin facility, it asserts that this facility played no role in the events giving rise to the suit. *See* ECF No. 40 at 14.

ParkerVision argues that this factor is neutral. ParkerVision points to Kolla's declaration that design of the accused products, along with storage of the related documents, occurred in India. ParkerVision further argues that TI's Austin sales facility caused injury in the WDTX because infringing products were sold and distributed to purchasers from Austin.

The Court holds that this factor favors transfer. ParkerVision takes an unduly narrow view of what sort of activity gives rise to local interests. Even if all design of all accused products took place purely in India, that would not end the inquiry. As the Federal Circuit has noted, research and development of accused products in a venue are also "significant factors" that give rise to local interests. *See In re Samsung Elecs. Co.*, 2 F.4th at 1380. As Ms. Kolla notes, U.S.-based development of the accused products occurred in Dallas. Kolla Decl. ¶ 8. With that having been said, the Court does not agree with TI that local interests strongly favor transfer. As it did in the sources of proof factor, *see supra* Section IV.B.1.b, TI fails to specify how much development occurs in Dallas versus India. Without this information, it is entirely possible that the U.S.-based development was minimal. Similarly, the fact that TI's U.S. employees with knowledge of the accused products are in Dallas does not strongly tilt this factor towards transfer when many employees either will never actually be trial witnesses or are not shown to have relevant, material, and non-

cumulative knowledge. *See supra* Section IV.B.1.a. The Court will therefore chart a middle path between the parties and weigh this factor in favor of transfer.

### c. Familiarity of the Forum with the Law That will Govern the Case; Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The Court agrees with the parties that these two factors are neutral. *See* ECF No. 40 at 15; ECF No. 44 at 14.

### 3. Good Cause to Transfer

After the eight convenience factors have been assessed, the Court must determine whether good cause to transfer venue has been shown. *See In re Clarke*, 94 F.4th 502, 514–16 (5th Cir. 2024). Good cause requires the movant to show two factors: "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Id.* at 508 (emphases in original).

To summarize the discussion above, the Court's conclusion for each factor is listed below:

| FACTOR | THE COURT'S FINDING |
|---|---|
| Relative ease of access to sources of proof | Neutral |
| Cost of attendance for willing witnesses | Slightly in favor of transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious, and inexpensive | Strongly against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Five factors are neutral, one is strongly against transfer, one favors transfer, and one slightly favors transfer. Of course, the transfer test is not just a "raw counting of the factors." *See*

*In re Radmax*, 720 F.3d at 290 n.8. Similarly, "[n]o factor is of dispositive weight." *In re TikTok*, 85 F.4th at 358.

With these principles in mind, the Court finds that good cause has not been shown. TI has failed to show a significant marginal gain in convenience given the less than 100 mile distance involved. Quite the contrary: when considered against the *in*convenience that would result from litigating this one case in a court with neither past experience with the asserted patents and technology nor co-pending actions, there is no gain in convenience at all. Similarly, although TI pointed to many potential witnesses, it presented them as an undifferentiated mass, without minimal analysis as to who it would actually call and whether any knowledge was cumulative among multiple witnesses. It is therefore not at all plainly obvious that convenience gains will actually materialize. Because of this, the Court concludes that the convenience factors also justify denying TI's motion to transfer venue.

## V.   CONCLUSION

For the foregoing reasons, Defendant Texas Instruments Inc.'s Motion to Transfer Venue, ECF No. 40, is **DENIED.**

**SIGNED** this 15th day of August, 2024.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE